McBRIDE, Judge.
Defendant, who had owned and operated a trade school in New Orleans for about twenty years, in December of 1948 instituted a new course of study, that of “body massage,” with the expectation that the new course would be attractive to G. I. students. The name of the school was thereupon changed to “Louisiana State Barber, Beauty & Vocational School.”
Of course, defendant undoubtedly foresaw a golden harvest resulting from the admission to the new course of G. I. students, whose tuition and upkeep would come out of the pockets of the taxpayers of the United States.
*361 It was necessary for defendant to obtain the approval of the Veterans Administration, which, in addition to approving defendant’s new course, would establish the monthly amount of tuition allowable for each of the G. I. students. As a basis for fixing the allowable tuition, it was neces-sar-y for defendant to submit a detailed list of the expenses of his school, insofar as the new course was concerned. Because the body massage course had no past financial experience respecting its costs of operation, defendant submitted a detailed list of estimated or projected expenses. He hoped to obtain a contract allowing, him $46 per month for each G. I. student, but after his application had been processed the tuition was .established at $21.61 per month per student, plus $2 per month per student for “consumable supplies.”
This matter comes before us on defendant’s appeal from a judgment in favor of plaintiff for $1267.50, emanating from the latter’s suit for a balance of salary which he claims is due him by defendant for services rendered as an instructor in the body massage course.
The import of plaintiff’s testimony is that on January 1, 1949, he approached defendant for a job as massage instructor, and that he ultimately entered into a verbal contract of employment with defendant and started to work on January 10, 1949. Plaintiff maintains that while it was agreed between himself and defendant that his starting salary would be $200 per month, on January 17, 1949, defendant promoted him to the rank of head body massage instructor, with a raise in salary to $300 per month, the additional amount being intended to be- compensation for overtime work which was expected of plaintiff.
On the other hand, defendant’s story is that he had nothing to do with plaintiff’s employment, but that plaintiff was employed by his wife, Cecile Douglas, who had charge of the massage course, and that she carried on all negotiations with plaintiff leading up to his appointment by her as instructor, The testimony of Cecile Douglas corroborates that of her husband in this respect, The bookkeeper of the school also testi-fled that it was Cecile Douglas who' hired plaintiff, as, from an adjoining room, she-, heard the conversations between Cecile Douglas and plaintiff. However, there is-some discrepancy in the testimony of the two women, Cecile Douglas claiming that the contract of employment was entered into at night, while the bookkeeper states' that the contract was made in the morning,
The tenor of the testimony adduced on behalf of the defendant is to the effect that Prudeaux was given to understand at the time of his employment that there -was no fixed salary attached to the job, as the school had applied to the Veterans Administration, for a contract, and that no salaries would be fixed until it was known by defendant what amount of tuition would be allowed him by the Veterans Administration for the G. I. students. Cecile Douglas is emphatic in her testimony that she told plaintiff that the other instructors were receiving $80 per month, and that she assured him that he would not get less than that, to which proposition Prudeaux assented and assumed the duties of his job. Defendant’s wife stated that when ^ afterward became known that the Veterans Administration would allow only $21.61 per month for each of the veteran students, the salary of the instructors was fixed at $100 per month. ■
While, defendant admits that plaintiff worked overtime, his contention is that, in performing the overtime duties, plaintiff did so not at the expense of the school, but to assist another instructor, from whose salary defendant deducted the amount of the overtime and credited it to plaintiff,
There is no dispute that plaintiff worked for defendant from January 10 through August 1, 1949. It is admitted by defendant that plaintiff earned in overtime $152.-50, an<i that his salary amounted in all to the sum of $680, of which $75 was for twenty-one days of the month of January, and $5 of which was for the one day which plaintiff worked in August, or a total amount of $832.50.
Plaintiff’s testimony, which is not denied, shows that although he was to be paid each month, nothing was paid to him until Au *362 gust, as the defendant put him off on the ground that he did not have the money with which to pay because nothing had been received from the Veterans Administration. Plaintiff remained on his job upon defendant’s promises that as soon as the tuition was forthcoming from the Veterans Administration he would be paid all that was coming to him.
Plaintiff terminated his employment in August, 1949, at which time, we glean from the record, the massage course was closed for a vacation period. About that time the defendant received a remittance from the Veterans Administration, but we are not informed as to how much was paid him. It seems, however, that the money received was not sufficient to pay all past due salaries, so the defendant prorated the money among the instructors, making to each of them a payment on account. Plaintiff’s pro rata amounted to $367.50, which was paid to him on August 18, 1949, and strangely to say, this remittance was made in the form of six checks for varying amounts. One check is for $12.50, two each for $40, one for $75, and two each for $100.
The explanation made on behalf of the defendant is that the $12.50 check and the two for $40, respectively, cover Prudeaux’s overtime work during January, February, and March, and that the $75 check and the two $100 checks, respectively, represent salary for the months of January, February, and March.
Defendant in his answer admitted that he still owed plaintiff a balance of $465, which he alleged had been tendered to and refused by plaintiff. When the answer was filed, defendant deposited that amount in the registry of the court, which plaintiff withdrew after bringing a rule on defendant to show cause why he was not entitled to receive it.
We have carefully searched the record to ascertain if there existed .therein any circumstances corroborative of plaintiff’s demands. Plaintiff places reliance on the testimony of his witness Isabel Gant, who had been employed in defendant’s school from January 10 to March 21, 1949. The Gant woman, who, like Prudeaux, was an instructor in the massage course, testified that she had no agreement with defendant respecting her own salary, except that she would get approximately $200 to $250 per month. Instead of corroborating plaintiff that salaries were fixed, his witness’s testimony tends to show that there was .no definite arrangement between defendant and his instructors as to how much salary they were to receive. At any rate, this indefinite testimony falls far short of corroborating plaintiff in his assertion that his contract with defendant specifically stipulated a salary of $300 per month.
In attempting to prove the amount of his salary, plaintiff brought into court, by way of subpoena duces tecum, certain records of the Veterans Administration, namely, the projected estimations of operational costs submitted by the defendant when making application for approval of the new course. These documents in nowise bolster plaintiff’s testimony that his salary was to be $300 per month, for we find that the data submitted on February 11, 1949, as respects Prudeaux, estimates his salary at $200, while a supplemental transmittal of information filed by defendant on March 30, 1949, estimates Pru-deaux’s salary at $3,000 per year.
The above constitutes about all of the salient facts of the case. Defendant first invokes the provisions of Art. 2277 R.C.C. as a bar to plaintiff’s recovery. That article is emphatic that verbal contracts for the payment of money, or agreements relative to movable property, above $500 in value, must be proved by at least one credible witness and other corroborating circumstances. Our thought is that the article has direct application in this case. There is not one item of proof, parol or documentary, bearing out plaintiff’s contention that his salary was definitely fixed at the sum of $300 per month.
On the contrary, after a minute study of the record, we are led to the conclusion that the evidence submitted on behalf of the defendant is the more worthy of consideration, although there are to> be found some inconsistencies therein.
*363 First let us consider the situation of the defendant. The body massage course had been newly created, and it behooved the defendant to obtain from the Veterans Administration as large a monthly tuition as he possibly could for G. I. students. Although plaintiff testified that on January 17, 1949, his salary was increased to $300 per month, we find that the defendant, in submitting his proposed operational costs to the Veterans Administration on February 11, 1949, estimated Prudeaux’s salary at. $200 per month. Human nature being what it is, why, we ask, would defendant, if he had definitely agreed to pay Pru-deaux $300 per month, estimate his salary at $200? It must be remembered that the operational costs of the school had much to do with the fixing of tuition for the students. The same thing can be said regarding the estimation of March 30, 1949.
There is another significant fact which militates against plaintiff. He contended throughout that in addition to his base salary of $200 per month he was to receive $100 each month for overtime services. This is refuted by the checks which plaintiff received from defendant on August 18, 1949. Whatever overtime was earned by plaintiff, it seems to us after an examination of the checks, was, as defendant contends, for assisting another instructor. For instance, the check for $12.50 contains the notation “Asst Mrs. Grossley Jan. 49.” On one of the $40 checks there appears the notation “Asst Mrs. Grossley, Feb. 49.” On one of the $100 checks there appears the note that it covered “Salary Feb.”
Plaintiff does not say that he complained to defendant about the notations on the checks. He stated that he accepted the checks, then proceeded to the “Labor Board” where he made a complaint against defendant for nonpayment of the balance of his salary. The checks were exhibited by Prudeaux to the employees of the “Labor Board,” who he says informed him that he could cash the checks without prejudice to his rights against defendant.
The transcription of his testimony reflects that Prudeaux is a man of considerable intellect, and we do not understand why he did not call to the attention of defendant the fact that the notations-on the checks were incorrect and not in. accord with the true situation. His acceptance of the checks without making complaint to defendant, coupled with his subsequent cashing of them, demonstrates that there is some verity in the notations.
Our brother below found for the plaintiff and rendered judgment in his favor for $1732.50, with legal interest from judicial demand, subject to a credit of $465 deposited in the registry of the court and withdrawn.by plaintiff. While we are always reluctant to disagree with a trial court on questions of fact, it is occasionally easier for an appellate court to perceive falsities and inconsistencies existing in a record by comparison and analysis of all parts of it, and reversals on facts are frequently necessary and sometimes occur.
We might state here that although art. 2277, R.C.C. was not called to the attention of the trial court, the defendant is entitled to invoke the article before us in resisting plaintiff’s demands. Plaintiff has failed to prove his case with any degree of legal certainty.
Our conclusion is that the judgment in favor of plaintiff should be amended to the extent that it allow plaintiff to have only the $465 admittedly due him, and which he withdrew from the registry of the court.
The judgment appealed from is, therefore, amended so as to allow plaintiff only the amount admittedly due him, to-wit, $465, which sum has heretofore been withdrawn by plaintiff from the registry of the court, and as thus amended the judgment appealed from is affirmed. Plaintiff is to pay all costs of both courts.
Amended and affirmed.